The United States Court of Appeals, Eleventh Circuit, pursuant to Rule 18, Ala.R.App.P., has certified a question of law to us.
QUESTION
 "Whether the sheriff of a county may be considered an 'employee' of the county for purposes of imposing liability on the county under a theory of respondeat superior.
 "Our statement of the question is not designed to limit the inquiry of the Supreme Court of Alabama.
 " '[T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.'
 "Citizens S. Factors, Inc. v. Small Business Administration, 375 So.2d 251 (Ala. 1979); see also Martinez v. Rodriguez, 394 F.2d 156, 159 n. 6 (5th Cir. 1968)."
 ANSWER
A sheriff is not an employee of a county for purposes of imposing liability on the county under a theory of respondeat superior. A sheriff is an executive officer of the State of Alabama, who is immune from suit under Article I, § 14, Alabama *Page 443 
Constitution of 1901, in the execution of the duties of his office, except for actions brought (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute. That portion of § 14-1-6, Code of Alabama 1975, which purports to make a sheriff civilly liable for the acts of his jailer is unconstitutional under Article I, § 14, and Article III, § 42, of the Alabama Constitution of 1901.
 DISCUSSION
In determining whether a sheriff is an employee of a county for purposes of imposing liability on the county, this court must construe Article V, § 112, of the Alabama Constitution, which includes sheriffs of each county within the executive department of state government. The language of § 112 is quite clear. It states: "The executive department shall consist of a governor . . . and a sheriff for each county." Ala. Const. Art. V, § 112. The phrase "executive department" obviously means the executive department of Alabama. Therefore, offices included within § 112 must be executive offices of the executive department of the State of Alabama. Construing § 112 to mean that a sheriff is a county officer would be inconsistent with the plain meaning of the language. This Court is not at liberty to disregard the clear meaning of the Constitution. McGee v.Borom, 341 So.2d 141 (Ala. 1976); State Docks Commission v.State ex rel. Cummings, 227 Ala. 414, 150 So. 345 (1933). When construing the Constitution of Alabama, the primary purpose of this court is to ascertain and then effectuate the framers' intent. Brown v. Longiotti, 420 So.2d 71 (Ala. 1982).
The debates among the drafters at the 1901 Constitutional Convention evince an intent to make sheriffs executive officers of the State of Alabama. First, in redrafting the 1875 Constitution, the framers added the offices of Lieutenant-Governor and Commissioner of Agriculture and Industries to the executive department. All other executive offices, including that of sheriff, were retained and enumerated, along with the two new offices, under what is now Art. V, § 112. Skinner, Alabama Constitution Annotated at 544. Although the delegates revised the composition of Alabama's executive department, they did not change the constitutional status of sheriffs. When this Court was called upon to define the nature of the new executive offices subsequent to the ratification of the 1901 Constitution, it stated that § 112 made the Commissioner of Agriculture and Industries "one of the executive officers of the state." Gibson v. State, 214 Ala. 38,106 So. 231 (1925). It logically follows, then, that a sheriff is also an executive officer of the state.
Though there is no reference in the official proceedings of the Constitutional Convention of 1901 to the inclusion of sheriffs within what is now Article V, § 112, the debate at that Convention on the method by which sheriffs should be impeached clarifies the framers' intent. Article VII, § 3, of the 1875 Constitution provided that sheriffs could be impeached by the courts of the counties in which they held office.Skinner, at 653. A proposed revision of this section precipitated a classic debate between proponents of local autonomy on the one hand and proponents of augmented central government on the other. Ex-Governor Thomas Goode Jones proposed an amendment, with the hope of reducing the excessive number of lynching cases in Alabama due to the neglect of sheriffs, which would allow the Governor to suspend a sheriff during the course of his impeachment trial. OfficialProceedings of the Constitutional Convention of 1901 (Vol. 1) at 887-90. The failure of county courts to punish sheriffs for neglect of duty and sheriffs' acquiescence in mob violence and ruthless vigilantism ostensibly led Governor Jones to believe that sheriffs must be held accountable to a higher and more central authority, the Supreme Court, and that this accountability would operate to guarantee *Page 444 
the political rights of prisoners. Id., at 887-90.
Specifically, the drafters, although acknowledging that sheriffs are members of the executive department, debated the issue of whether the Governor had the power to suspend and to impeach them. Id., at 892. One legislator vehemently argued that, since sheriffs are elected by the people of a county, sheriffs are responsible to the counties, not to the Governor, and thus should be removable by the county constituents, and that any other conclusion would operate as a usurpation of local autonomy. Id., at 878-79. Other legislators argued that because a sheriff is an executive officer, he is ultimately responsible to the Governor. By proposing the amendment to § 30, the framers of the 1901 Constitution not only aspired to protect the political rights of prisoners but also to augment the power of the Governor to more effectively perform his constitutional duty, as set out in Article V, § 120, to ensure that the laws of the state are "faithfully executed." Id., at 882. The drafters thought sheriffs to be members of the executive branch who executed the laws of the state in the several counties. By making sheriffs answerable to the Governor, the drafters believed that the words of the constitution mandating that the Governor see that the laws are faithfully executed would not be "an idle set of words" but words behind which stood a chief executive officer who possessed the wherewithal to enforce them, namely, a sheriff in each county. Id., at 882-83. In support of this position, one delegate argued:
 "The Governor is the chief executive officer of the state. The Constitution clothes him with the duty of seeing to it that the laws are faithfully executed. What folly would it be to clothe him with that power and yet say to him you have no control over the inferior executive officers of the commonwealth, the inferior executive officers can permit murder in the jails of the State and yet you be powerless to enforce the law."
The convention reached a compromise and empowered a Governor with the authority to order impeachment proceedings before the Supreme Court but prohibited the Governor from suspending the sheriff during the proceedings and before a verdict. McMillan, Constitutional Development in Alabama,1798-1901: A Study in Politics, the Negro, and Sectionalism, at 338. Sheriffs were made more accountable to the supreme executive power of the state, the Governor. Art. V, § 113, Constitution; § 36-11-4, Ala. Code 1975. This constitutional revision vested the Supreme Court with original jurisdiction to hear impeachment proceedings against sheriffs. State ex rel.Mullis v. Mathews, 259 Ala. 125, 66 So.2d 105 (1953).[1] County courts were divested of this authority, which they had had under the 1875 Constitution. The framers of the 1901 Constitution listed sheriffs among those officials who are impeached directly by the Supreme Court. Skinner, at 650-53. The debates between the delegates evince the framers' intent to ensure that sheriffs be considered executive officers of the state.
In other jurisdictions, the constitutional status afforded sheriffs is determinative of whether sheriffs are considered "county" or "state" officers. For example, in New Jersey a sheriff is a constitutional state officer, elected by the people of the counties, and subject to impeachment by the legislature. N.J. Const. Art. VII, § II, par. 2, § III; Shustedv. Coyle, 139 N.J. Super. 314, 353 A.2d 562 (1976). In Maryland, where sheriffs are members of the judicial *Page 445 
department, an appellate court has defined them as "state" rather than "county" officers. Md. Const. Art. IV, § 44;Baumgartner v. State, 21 Md. App. 251, 319 A.2d 592 (1974). In Louisiana, where sheriffs are also included within the judicial department, the state's highest court has denied the imposition of vicarious liability on parishes for the acts of sheriffs or any of their deputies. La. Const. Art. 5, § 27, Jenkins v.Jefferson Parish Sheriff's Office, 402 So.2d 669 (La. 1981). Other states, however, have constitutions that expressly define sheriffs as "county officers." Ill. Const. Art. VII, § 4(c); Tenn. Const. Art. VII, § 1; Fla. Const. Art. VII, § 1; Ga. Const. Art. 9, § 1, # 3; N.Y. Const. Art. 13, § 13. We are not persuaded by decisions from jurisdictions whose constitutions, unlike Alabama's, clearly make sheriffs county officers. The certified question pertains only to Alabama.
Our appellate opinions, in dicta or in the holdings in some cases, have referred to sheriffs as county officers or as the chief executive officers of counties: State ex rel. Martin v.Pratt, 192 Ala. 118, 68 So. 255 (1915) (dicta); JeffersonCounty v. Dockerty, 249 Ala. 196, 30 So.2d 474 (1947), (to pay county treasurer fees derived from office); In re Opinion ofthe Justices No. 16, 225 Ala. 359, 143 So. 345 (1932) (to permit legislature to set fees of sheriff of Jefferson County);Hale v. Randolph County Commission, 423 So.2d 893
(Ala.Civ.App. 1982) (question of who regulated overtime pay for deputies); Osborn v. Henry, 200 Ala. 353, 76 So. 119 (1917). In none of these cases was Article V, § 112, Constitution of 1901, discussed. The clear intention of the framers of the Constitution overrides these decisions, none of which held that sheriffs were county officers for the purpose of imposing vicarious liability on a county for the acts of a sheriff.
In Montiel v. Holcombe, 240 Ala. 352, 199 So. 245 (1940), this Court held that a suit against a sheriff was "essentially a suit against the state."
Article I, § 14, Alabama Constitution of 1901, provides:
 "That the State of Alabama shall never be made a defendant in any court of law or equity."
This Court has held that this section of the Constitution wholly withdraws from the legislature, or any other state authority, the power to consent to an action against the state. Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1971);Dunn Construction Co. v. State Board of Adjustment, 234 Ala. 372,175 So. 383 (1937). Section 14 of the Constitution also prevents actions against officers and agents of the state in their official capacity. Aland v. Graham, supra. An action against the Attorney General of Alabama, who is also designated as an executive officer of the State of Alabama in § 112 of the constitution, was subject to dismissal as an action against the state in violation of § 14 of the constitution, because of his position. State Tax Commission v. Commercial Realty Co.,236 Ala. 358, 182 So. 31 (1938).
The Court in Gill v. Sewell, 356 So.2d 1196 (Ala. 1978), stated that § 14 "prohibits a suit against state officers and agents in their official capacity and individually when a result favorable to the plaintiff would directly affect a contract or property right of the state." 356 So.2d at 1198. However, the Court in Gill continued by delineating several exceptions to the general rule, which exceptions, if applicable, preclude a state officer from claiming protection from suit pursuant to § 14; 356 So.2d at 1198, quoting Aland v.Graham, 287 Ala. 226, 250 So.2d 677 (1971). Section 14 immunity is not applicable when an action is brought: (1) to compel state officials to perform their legal duties; (2) to compel state officials to perform ministerial acts; (3) to enjoin state officials from enforcing unconstitutional laws; (4) to enjoin state officials from acting in bad faith, fraudulently, beyond their authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act. Gill v. Sewell, 356 So.2d at 1198; see also, State v. Norman Tobacco Co., 273 Ala. 420,142 So.2d 873 (1962); St. Clair County v. Town of Riverside, 272 Ala. 294, 128 So.2d 333 (1961). In Gill, the plaintiff, a police officer, *Page 446 
while investigating a robbery, sustained gunshot wounds inflicted by a convicted felon. The plaintiff brought suit against state officials who, as he alleged, had acted negligently in releasing the convicted felon to a minimum security prison just prior to the robbery attempt in which the plaintiff was injured. Noting that negligent performance of a statutory duty does not operate to remove the § 14 shield of immunity, the Court, in an opinion by Justice Almon, held that § 14 barred the suit and that none of the exceptions applied. Gill, 356 So.2d at 1198.
From the facts furnished to us by the Court of Appeals, it appears that the case at bar is analogous to the situation inGill. The plaintiff, Ms. Lolita Parker, alleges that a state official, Sheriff Amerson, committed negligent and wanton acts that caused her to suffer harm, while executing his discretionary duties of hiring a jailer. From the facts furnished us, it appears that none of the exceptions enumerated in Gill applies. See also, Southall v. Stricos Corp., 275 Ala. 156, 153 So.2d 234 (1963). This Court has specifically held that a suit against a sheriff is "essentially a suit against the state" and thus "not maintainable." Montiel v. Holcombe,240 Ala. 352, 199 So. 245 (1940). Thus, § 14 and judicial precedent mandate the conclusion that Sheriff Amerson is immune from suit.
Because a sheriff is a state officer and thus immune from suit, the remaining question is whether § 14-6-1, Ala. Code 1975, which makes a sheriff civilly liable for acts of his jailer,[2] violates Art. 1, § 14, of the Ala. Constitution. First, the immunity provision of the Constitution prevents the legislature from consenting to suit against the state. Aland v.Graham, supra. The Constitution operates as a limitation on legislative power. Phoenix Assurance Co. of London v. FireDept. of the City of Montgomery, 117 Ala. 631, 651, 23 So. 843
(1898). When the Constitution and a statute are in conflict, the Constitution controls; the legislature cannot do what the Constitution forbids it to do. Williams v. State ex rel.Schwarz, 197 Ala. 40, 72 So. 330 (1916). To the extent that it purports to impose civil liability on a sheriff for the acts of a jailer appointed by the sheriff, § 14-6-1 is in violation of Art. 1 § 14. This statute may also be violative of Art. III, § 42, Ala. Constitution ("[t]he powers of government . . . shall be divided into three distinct departments, each of which shall be confided to a separate body"). The words "distinct" and "separate" are devoid of meaning if one branch can arbitrarily impose restrictions on another branch. By making an executive officer liable for the tortious acts of his employees, the legislative branch has usurped the powers of the executive branch and has subverted the judicial principle that each coordinate branch is supreme. State ex rel. French v. Stone,224 Ala. 234, 139 So. 328, 329 (1932).
CERTIFIED QUESTION ANSWERED.
MADDOX, JONES, ALMON, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
TORBERT, C.J., concurs specially.
[1] This Court stated in State ex rel. Mullis v. Mathews,259 Ala. at 129, 66 So.2d at 107, that the "authority to impeach the sheriff is under section 174 of the Constitution for the causes set forth in section 173. It must be done by original proceedings begun in this Court." (It is noteworthy that an impeachment proceeding against a sheriff is similar to a criminal trial. The Supreme Court hears and weighs evidence and then, using a "beyond a reasonable doubt standard," makes a determination of guilt or innocence on one of the charges set forth in § 173 of the Constitution.) Likewise, in State ex rel.Garrett v. McPeters, 256 Ala. 555, 56 So.2d 102 (1951), this Court in an original proceeding, acting on an information of impeachment filed in this Court by the Attorney General, found a sheriff guilty of corruption and ousted him from office. See also, State ex rel. Carmichael v. Baggett, 252 Ala. 540,41 So.2d 584 (1949).
[2] This Court has held that a sheriff is civilly liable for the official acts of his deputies. King v. Gray, 189 Ala. 686,66 So. 643 (1914); contra, Wise v. Curl, 177 Ala. 324, 58 So. 286
(1912). Article V, § 112, and Article I, § 14, Alabama Constitution of 1901, were not referred to by the Court in either of those cases. In Roberts v. Meeks, 397 So.2d 111 (Ala. 1981), the court reversed a trial court's dismissal of a complaint alleging negligence against a county, county commissioners, the sheriff, and the jailer. The only issue argued and addressed by the opinion was whether the abolition of the defense of governmental immunity in tort actions against counties and county commissioners applied only to cases arising after the release of Cook v. St. Clair County, 384 So.2d 1
(Ala. 1980). The status of the sheriff was not addressed by the Court.