United States Court of Appeals,

Eleventh Circuit.

No. 94-6889.

Joel TINNEY, Lisa Tinney, Plaintiffs-Appellees,

v.

Edith SHORES, Defendant,

Bill Franklin, as Sheriff of Elmore County and in his individual capacity, Paul Henderson, as Deputy Sheriff of Elmore County and in his individual capacity, Defendants-Appellants,

Elmore County, Alabama, Defendant.

March 8, 1996.

Appeal from the United States District Court for the Middle District of Alabama. (No. CV 93-A-762-N), W. Harold Albritton, III, Judge.

Before TJOFLAT, Chief Judge, CARNES, Circuit Judge, and JOHNSON, Senior Circuit Judge.

PER CURIAM:

In this appeal from the Middle District of Alabama, Bill Franklin, Sheriff of Elmore County, and Paul Henderson, Chief Deputy Sheriff of Elmore County (collectively, "Appellants"), appeal the district court's denial of their motion for summary judgment with respect to the claims of Joel and Lisa Tinney under the Due Process Clause of the Fourteenth Amendment and 42 U.S.C.A. § 1983 (West 1994) and under various state laws. We reverse the denial of summary judgment on the substantive and procedural due process claims. We also reverse the denial of summary judgment on the state law claims, based on Appellants' sovereign immunity.

I. STATEMENT OF THE CASE

A. *Factual Background*

Joel and Lisa Tinney lived in their house-trailer with their

two young children on land leased from Edith Shores. On or about July 13, 1991, Shores told the Tinneys that their rent was approximately $400 in arrears. After they failed to pay, the Tinneys received an eviction notice, and the landlord instituted eviction proceedings.

On August 8, 1991, Appellants served Mr. Tinney with eviction papers. Mr. Tinney told them that the house-trailer would be moved by noon that day. Shortly thereafter, however, Henderson returned and informed the Tinneys that, over the telephone, a bank had given Shores a lien on the house-trailer and that the Tinneys were not permitted to move it. The Tinneys were not served with any official attachment papers. Nevertheless, they were told that they would have until noon to remove their personal possessions from the house-trailer. After moving one load of possessions in a small automobile, the couple returned to find the house-trailer padlocked; they were unable to remove any more of their possessions.

Soon thereafter, the Tinneys received a letter from Shores' attorney, informing them that the house-trailer would be sold unless they paid the rent in arrears. Shores did not file suit to recover either the unpaid rent or payments on the house-trailer. Nonetheless, Shores sold the house-trailer and the Tinneys' possessions were not returned.

B. *Procedural History*

In June 1993, the Tinneys filed this action in federal district court naming as defendants Shores, Appellants, and Elmore County. The Tinneys asserted state law claims for conversion and

trespass and Section 1983 claims based on deprivations of their 14th Amendment substantive and procedural due process rights and their Fourth Amendment right to be free from unreasonable searches and seizures.  In July 1993, the Tinneys amended their complaint to sue Appellants in both their individual and their official capacities.

In December 1993, the district court dismissed all claims against Elmore County and all claims against Appellants in their official capacities.  In June 1994, Appellants moved for summary judgment on the remaining claims, both on the merits and on qualified, quasi-judicial and state sovereign immunity grounds.  In August 1994, the district court granted Appellants' motion with regard to the Fourth Amendment claim but denied it with regard to the due process claims and the state law claims.  Appellants timely filed their notice of interlocutory appeal.

## II. DISCUSSION

On appeal, Appellants contend (1) that the district court erred in denying summary judgment based on Appellants' qualified immunity from the Tinneys' substantive due process and procedural due process claims, and (2) that the district court erred in denying summary judgment on the state law claims based on state sovereign immunity.

A. *Qualified Immunity*

Because qualified immunity provides the right not to be burdened by trial, and not simply a defense to liability, this Court has jurisdiction to review interlocutory appeals from orders denying summary judgment based on qualified immunity.  *Mitchell v.*

*Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). *Ansley v. Heinrich,* 925 F.2d 1339, 1345 (11th Cir.1991). We review this question of law *de novo.* *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1487 (11th Cir.1992), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993). In so doing, our inquiry is confined to whether the record, viewed in the light most favorable to the party opposing summary judgment, reveals violations of clearly established law. *Rogers v. Miller,* 57 F.3d 986 (11th Cir.1995).

Qualified immunity protects government actors in their individual capacities from civil damage claims, provided that their conduct does not violate clearly established constitutional rights. *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir.1994). The Supreme Court has stated that "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Accordingly, we first examine whether the Tinneys have asserted a cognizable constitutional claim. *See Wooten v. Campbell,* 49 F.3d 696, 699 (11th Cir.1995). *Jordan v. Doe,* 38 F.3d 1559, 1564 (11th Cir.1994).

1. *The Substantive Due Process Claim*

Relying on *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), Appellants contend that the district court

erred by denying them summary judgment on the Tinneys' substantive due process claim, arguing that the Fourth Amendment provides whatever protection, if any, the constitution guarantees in a seizure case like this one.  In *Graham,* the Supreme Court held that where a particular amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of "substantive due process' must be the guide for analyzing" the claim.  *Id.* at 395, 109 S.Ct. at 1871.  *Graham* involved a claim that law enforcement officers used excessive force during an investigatory stop.  The Court held that all cases involving allegations of the use of excessive force in an arrest, an investigatory stop, or any other seizure, should be analyzed under the Fourth Amendment.  *Id.*

More recently, in *Albright v. Oliver,* the Supreme Court held that an allegation of prosecution without probable cause must also be analyzed under the Fourth Amendment, without reference to the more general considerations of substantive due process.  --- U.S. ----, ----, 114 S.Ct. 807, 817, 127 L.Ed.2d 114 (1994).  "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation and the right to bodily integrity ..." *Albright,* --- U.S. at ----, 114 S.Ct. at 812.

*Soldal v. Cook County* makes clear that the Fourth Amendment is the textual source of the Tinneys' constitutional protection.  In *Soldal,* the Supreme Court held that police officers' participation in the seizing and carrying away of a family's mobile home was a

seizure under the Fourth Amendment. 506 U.S. 56, ----, 113 S.Ct. 538, 549, 121 L.Ed.2d 450 (1992). Thus, the Tinneys' substantive due process claim is foreclosed by *Albright* and *Soldal.* Because the Tinneys have failed to assert a cognizable constitutional claim, the district court erred by denying Appellants summary judgment.

2. *The Procedural Due Process Claim*

The Tinneys assert, and the district court held, that Appellants' failure to adhere to Alabama's pre-deprivation takings procedure constituted a procedural due process violation. Conversely, Appellants contend that the district court erred in denying them summary judgment on the procedural due process claim because adequate post-deprivation remedies were available under state law. In other words, Appellants maintain that the deprivation in this case was not complete because a property deprivation does not occur until the state has been given the opportunity to remedy the state employees' error and has failed to do so.

Appellants' contention rests on *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part not relevant by Daniels v. Williams,* 474 U.S. 327, 330-31, 106 S.Ct. 662, 664-65, 88 L.Ed.2d 662 (1986). *Parratt* involved a prisoner's loss of property due to the random, negligent act of a state employee. The Supreme Court held that the state tort remedies available to the prisoner satisfied the prisoner's due process rights because due process does not require a pre-deprivation hearing where such a hearing would be impracticable—i.e., where the

deprivation results from an employee's negligent act. In *Hudson v. Palmer,* 468 U.S. 517, 531, 104 S.Ct. 3194, 3202, 82 L.Ed.2d 393 (1984), the Court extended *Parratt* 's reasoning and held that "an unauthorized *intentional* deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the 14th Amendment if a meaningful post-deprivation remedy for the loss is available." The state's action is not complete unless and until it refuses to provide a post-deprivation remedy. *Id.*

The Tinneys contend that application of the *Parratt* rule in cases like this one amounts to a requirement that a Section 1983 plaintiff seeking to redress a violation of procedural due process must exhaust his or her state remedies before suing in federal court. The Supreme Court rejected such a requirement in *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, the Tinneys' contention lacks merit. In a recent public employment case brought under Section 1983, this Court, sitting *en banc,* explained the difference between *Patsy* 's import and *Parratt* 's:

> In *Patsy* the Supreme Court held that section 1983 plaintiffs were not required to avail themselves of available state remedies before suing in federal court; the Court's holding presumed the presence of a valid constitutional claim. In this case, McKinney cannot state a valid constitutional claim under *Parratt* and *Bishop* because Florida provides an adequate process to remedy McKinney's alleged injury....

*McKinney v. Pate,* 20 F.3d 1550, 1563 n. 20 (1994) (*en banc* ), *cert. denied,* --- U.S. ----, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995).

As in *McKinney, Patsy* is inapplicable here. Under *Parratt* and *Hudson,* the Tinneys have failed to state a valid procedural due

process claim because they have not alleged that Alabama law provided them with an inadequate post-deprivation remedy.[1]  Thus, the district court erred by denying summary judgment.[2]

B. *State Sovereign Immunity*

Appellants also contend that the district court erred in denying them summary judgment on the state law claims.  Appellants maintain that they are entitled to state sovereign immunity under Alabama law.  Both parties invoke this Court's jurisdiction under *Griesel v. Hamlin,* 963 F.2d 338, 341 (11th Cir.1992), which held that denials of sovereign immunity under Georgia law are

---

[1] In holding that *Parratt* was inapplicable to the instant case, the district court relied upon *Fetner v. City of Roanoke,* 813 F.2d 1183, 1185 (11th Cir.1987), wherein we wrote "[t]he touchstone in *Parratt* was the impracticability of holding a hearing prior to the claimed deprivation."  On the basis of this language, the district court held:  "[a]ttachment is a daily occurrence and because the State has pre-deprivation procedures in place, [Appellants] cannot maintain that pre-deprivation process was impracticable."  The district court misconstrued the notion of "impracticability" as it is used in *Parratt.*  The question is whether the *state* can anticipate and therefore control the action of a state employee.  *See Hudson,* 468 U.S. at 533, 104 S.Ct. at 3203.  Once a state has established procedures for the effectuation of an attachment—which Alabama undisputedly has—it cannot predict whether or not, in a given situation, those procedures will be followed or ignored.  Thus, as with an employee's negligence or an employee's intentional wrongful act, Appellants' actions in this case were not preventable beforehand by the state.  Therefore, under *Parratt* and *Hudson,* no procedural due process violation occurs unless the state fails to provide the opportunity to redress the situation after the fact.  The Tinneys argue *only* that the due process violation was complete at the time of the attachment, without regard to the availability of post-attachment remedies, and thus they have failed to establish a procedural due process violation.  Because the Tinneys have not challenged the adequacy of Alabama's post-deprivation remedies, we have no occasion to decide whether Alabama law does in fact provide adequate avenues for making the Tinneys whole.

[2] Appellants also challenge the district court's denial of summary judgment on the basis of absolute quasi-judicial immunity.  Because we decide that summary judgment was proper on other grounds, we need not reach this issue.

immediately appealable.  *See also, Cummings v. DeKalb County,* 24 F.3d 1349, 1352 (11th Cir.1994).  *Griesel* reasoned that sovereign immunity in Georgia is immunity from suit, not merely a defense from liability.  *Id.*  This same rationale applies equally to a claim of sovereign immunity under Alabama law.

Alabama grants sovereign immunity to its state executive officers pursuant to Article I, Section 14 of the Alabama Constitution of 1901.  Section 14 states that "the State of Alabama shall never be made a defendant in any court of law or equity." Under Alabama law, both sheriffs and deputy sheriffs are considered executive officers of the state, immune from suit under Section 14.[3]  *See Parker v. Amerson,* 519 So.2d 442, 443 (Ala.1987).  *Parker v. Williams,* 862 F.2d 1471, 1475 (11th Cir.1989).  *Drain v. Odom,* 631 So.2d 971, 972 (Ala.1994).  Like Georgia, then, Alabama intended for its state officers to be immune from suit.  As such, the denial of summary judgment based on sovereign immunity is properly before us on interlocutory appeal.

Sovereign immunity is a question of law we review *de novo.* *Cummings,* 24 F.3d at 1353.  Under Alabama law, sheriffs and deputy sheriffs, in their official capacities and individually, are absolutely immune from suit when the action is, in effect, one against the state.  *Phillips v. Thomas,* 555 So.2d 81, 83 (Ala.1989).  The district court noted, though, that *Phillips* and *Gill v. Sewell,* 356 So.2d 1196, 1198 (Ala.1978) identify a number

---

[3]Alabama law affords § 14 immunity to state officers sued in both their official and individual capacities. *See Phillips v. Thomas,* 555 So.2d 81, 83 (Ala.1989). *Gill v. Sewell,* 356 So.2d 1196, 1198 (Ala.1978).

of exceptions to Section 14 immunity. Specifically, the district court held that sovereign immunity does not protect state officials who act under a mistaken interpretation of law. Based on this exception, the district court found that Appellants were not entitled to sovereign immunity.

Recent Alabama case law makes it clear, however, that the exception relied upon by the district court is inapplicable in this case. In *Alexander v. Hatfield,* 652 So.2d 1142, 1143 (Ala.1994), the plaintiff sued the sheriff for negligence and bad faith service of process. The Alabama Supreme Court explained that under Article I, § 14, the *only* exceptions to a sheriff's immunity from suit are actions brought to *enjoin* the sheriff's conduct. *Id.* at 1143.[4] *See also Carr v. City of Florence,* 916 F.2d 1521, 1525 (11th Cir.1990). Because the sheriff in *Alexander* was being sued for damages and not injunctive relief, the court held that the exceptions to Section 14 were inapplicable and therefore the sheriff was immune from suit. *Id.*

Like *Alexander,* Appellants in this case are being sued for damages, based upon claims of conversion and trespass, and not for

---

[4]The court stated:

> Under Article I, Sec. 14, of the Alabama Constitution of 1901, the only exceptions to the sovereign immunity of sheriffs are actions brought
>
> (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute. (citations omitted).

injunctive relief.  Therefore, Appellants are entitled to sovereign immunity from the state law claims.  Accordingly, we reverse the district court's denial of summary judgment on these claims.

## III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's denial of summary judgment on the Tinneys' substantive due process and procedural due process claims.  We also REVERSE its denial of summary judgment based on Appellants' sovereign immunity from the state law claims.